UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>M.G. OIL COMPANY,<br>d/b/a HAPPY JACK'S,<br><br>Defendant and<br>Third-Party Plaintiff,<br><br>v.<br><br>TESTPOINT PARAMEDICAL, LLC,<br><br>Third-Party Defendant. | CIV. 4:16-4131-KES<br><br><br>ORDER GRANTING MOTION<br>TO STRIKE AND GRANTING<br>MOTION TO DISMISS |

Plaintiff, the Equal Employment Opportunity Commission (EEOC), moves to strike the third-party complaint filed by M.G. Oil Company. Docket 11. Third-party defendant, TestPoint Paramedical, LLC, moves to dismiss the third-party complaint under Rules 12(b)(1) and (6). Docket 14. TestPoint joins the EEOC's motion to strike the third-party complaint. Docket 16. Defendant, M.G. Oil Company, opposes the motion to strike and the motion to dismiss. Dockets 17 and 19. For the following reasons, the EEOC's and TestPoint's motions are granted.

**FACTUAL BACKGROUND**

During the time relevant to this case, M.G. Oil had a contract with TestPoint to have TestPoint analyze M.G. Oil's drug tests of prospective new

employees and inform M.G. Oil whether the test results were negative or non-negative for drugs. Docket 7 ¶ 4. M.G. Oil asserts that if the sample analysis yielded a non-negative result, then TestPoint was obligated to send the drug test to a medical review officer to determine whether the non-negative result was a consequence of the test subject taking a legal prescription drug. *Id.* ¶ 5. Then, if the non-negative result was due to a legal prescription drug, TestPoint would report the test results as negative to M.G. Oil. *Id.* ¶ 6.

On April 8, 2013, Kim Mullaney applied for a job with Happy Jack's in Sioux Falls, South Dakota, which is owned by M.G. Oil. Docket 2 at 4. Contingent on a negative drug test result, Mullaney was offered a position with M.G. Oil. *Id.* On April 9, 2013, Mullaney took the drug test and it was sent to TestPoint for analysis. Docket 7 ¶ 8. TestPoint reported to M.G. Oil that Mullaney's drug test result was non-negative. *Id.* ¶ 9. M.G. Oil asserts there was no indication that TestPoint had not sent the drug test to a medical review officer to verify the result. *Id.* M.G. Oil alleges that it assumed the drug test previously had been sent to a medical review officer to determine if there was a valid legal reason for the non-negative result and based on this assumption, it rescinded its employment offer to Mullaney. *Id.* ¶ 10.

Mullaney claims she is a disabled person under Sections 3 and 101(8) of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12102 and 12111(8). Docket 2 ¶ 14. Mullaney alleges that, after the revocation of her employment offer, she explained to M.G. Oil that the non-negative drug test results were due to her lawful use of a prescription pain killer she took for back pain.

*Id.* ¶ 18. She also claims that, despite her explanation, M.G. Oil refused to reconsider her for the position. *Id.* ¶ 20. M.G. Oil asserts that before her drug test Mullaney "never indicated she had an impairment and never appeared to have an impairment." Docket 17 at 2. M.G. Oil admits that Mullaney notified M.G. Oil of her prescription painkiller use, but asserts that it "had no way of knowing whether these claims were true." Docket 5 ¶ 18.

Claiming to fit the ADA's disabled person description, Mullaney filed her charge against M.G. Oil with the EEOC. Docket 2 ¶ 7. On Mullaney's behalf, the EEOC sent a conciliation letter to M.G. Oil, alerting the company to the allegedly discriminatory actions that it had taken against Mullaney and seeking appropriate relief. *Id.* ¶ 8. M.G. Oil and the EEOC could not reach an agreement about how to resolve Mullaney's complaint with M.G. Oil. *Id.* ¶ 10. After the EEOC's letter concerning Mullaney's alleged discrimination failed to resolve the dispute, the EEOC filed suit against M.G. Oil on Mullaney's behalf. Docket 5 ¶ 9; Docket 2.

**PROCEDURAL BACKGROUND**

EEOC filed suit against M.G. Oil claiming that M.G. Oil discriminated against Mullaney in violation of Title I of the ADA. Docket 2. M.G. Oil filed a third-party complaint against TestPoint, claiming that if it were found liable to Mullaney for discrimination, then TestPoint was liable to it for all (indemnification) or part (contribution) of the judgment because TestPoint breached its contract with M.G. Oil and was negligent. Docket 7. The EEOC moved to strike M.G. Oil's third-party complaint. Docket 11. TestPoint moved

to dismiss M.G. Oil's third-party complaint for failure to state a claim upon which relief can be granted. Docket 14. And TestPoint moved to join EEOC's motion to strike M.G. Oil's third-party complaint. Docket 16.

## LEGAL STANDARD

A defendant can file a third-party complaint only against a nonparty "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). According to Rule 14(a), "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4). If the third-party complaint fails to state a claim upon which relief can be granted, the third-party complaint is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). Also, if the third-party complaint states a claim that lacks jurisdiction, the complaint is subject to dismissal under Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1). The court should accept as true the facts alleged in the third-party complaint. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697-98 (8th Cir. 2003).

A court may dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Inferences are construed in favor of the nonmoving party. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 556 (2007)).

## DISCUSSION

M.G. Oil filed a third-party complaint against TestPoint that seeks indemnification and contribution based on allegations of breach of contract and negligence. Docket 7. M.G. Oil argues that TestPoint breached its contractual duty with M.G. Oil to send non-negative drug tests to a medical review officer to determine if there is a valid legal reason for the non-negative test result. *Id.* ¶ 14. Because of this alleged breach, M.G. Oil argues that TestPoint is liable to it for any damages Mullaney is awarded against M.G. Oil. *Id.* ¶¶ 21, 23. M.G. Oil characterizes its involvement in this matter as passive, while arguing that TestPoint's acts and omissions concerning the drug test entitle M.G. Oil to indemnification or contribution from TestPoint. *Id.*

The EEOC and TestPoint both argue that M.G. Oil's claims for indemnity and contribution from TestPoint are not permitted under Title I of the ADA. *See* Dockets 12, 15. They both also argue that because M.G. Oil's claims are impermissible, dismissal under Rule 12(b) is appropriate. *Id.* Both the EEOC and TestPoint rely on the Supreme Court's holding in *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77 (1981), to support their arguments. Docket 12 at 6; Docket 15 at 5.

In *Northwest Airlines*, the airline was previously found—in a separate lawsuit—to be liable to its female employees under Title VII and the Equal Pay Act for failing to provide back pay to a class of female employees. *See Nw.*

5

*Airlines*, 451 U.S. at 79-82 (describing the background of the *Laffrey* litigation); *see also Laffrey v. Nw. Airlines, Inc.*, 366 F. Supp. 763 (D.D.C. 1973). After the *Laffrey* litigation concluded, Northwest Airlines filed a claim seeking contribution from the Transport Workers Union. *See Nw. Airlines*, 451 U.S. at 82-86. The issue before the United States Supreme Court was whether a claim for contribution could be pursued by employers in federal court under Title VII or the Equal Pay Act. *See id.* at 79-80. *Northwest Airlines* establishes that the right to contribution under a federal statute may be created in two ways: (1) by express or implied language in the statute and (2) by federal common law "through the exercise of judicial power to fashion appropriate remedies for unlawful conduct." *Id.* at 90. The Court found that the Equal Pay Act and Title VII did not expressly create a right to contribution in favor of employers. *Id.* at 91. And "the language of neither statute supports implication of a right to contribution in favor of employers against unions." *Id.* at 93. Furthermore, although the Court recognized it possessed the judicial power to fashion a remedy by adding a right to contribution to the statutory scheme, the Court concluded "that it would be improper for [the Court] to add a right to contribution to the statutory rights that Congress created in the Equal Pay Act and Title VII." *Id.* at 98.

    M.G. Oil attempts to counter the EEOC's and TestPoint's interpretation of *Northwest Airlines* by arguing that the holding actually supports maintaining the third-party action because claims for indemnity and contribution are recognized under South Dakota statutes, specifically SDCL §§ 15-8-11 through

6

15-8-22. Docket 19 at 6-7. But here the EEOC is not asserting a claim under state law. *See Nw. Airlines*, 451 U.S. at 94-95 (concluding that where Congress failed to manifest an intent to create a right of contribution under the Equal Pay Act and Title VII, the Court could not imply a right to contribution under those statutes). Instead, the EEOC brings its action here only under Title I of the ADA—a federal statute. Docket 21 at 2-3; *see also* Docket 2 ¶ 1 (citing the various *federal statutes* that vest the court with jurisdiction).

The Eighth Circuit has not ruled directly on the issue of whether a third-party complaint for indemnity or contribution for a claim under the ADA is permissible. But in *Travelers Casualty & Surety Co. of America v. IADA Services., Inc.*, 497 F.3d 862 (8th Cir. 2007), the Eighth Circuit did address whether a fiduciary who violated the requirements of the Employee Retirement Income Security Act of 1974 (ERISA) could bring a related federal-law or state-law claim for contribution against another fiduciary who allegedly had some responsibility for the violations. *Id.* at 864. In concluding that such an action was not permissible, the *Travelers* court observed that because "Congress made a policy choice to exclude a remedy of contribution for breaching fiduciaries, it would undermine the comprehensive federal scheme to permit an action under state law for that same remedy." *Id.* at 867. The Eighth Circuit further concluded that to "recognize a state-law cause of action [such as actions for contribution, indemnity, or restitution] that supplements the federal scheme in these circumstances would 'pose an obstacle to the purposes and objectives of Congress,' and the state common-law claims are therefore

7

preempted [under ERISA]." *Id.* at 868 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987)).

While *Northwest Airlines* addressed claims for contribution under Title VII and the Equal Pay Act, it did not directly address the issue of whether claims for indemnification are permissible. There are inherent similarities between the two methods of transferring liability: contribution transfers partial liability while indemnification transfer total liability. This court agrees with the rational in *Anderson v. Local Union No. 3, International Brotherhood of Electrical Workers*, 582 F. Supp. 627, 633 (S.D.N.Y. 1984), which held that "[a]lthough the Supreme Court in *Northwest Airlines* addressed itself only to claims for contribution, we assume that the rationale of that case would equally bar claims for indemnity." Thus, the court concludes that *Northwest Airlines'* holding barring claims for contribution applies equally to bar claims for indemnification.

The EEOC and TestPoint also argue that, through analogy, the holding in *Northwest Airlines* applies to ADA claims because of the similarities between the relevant federal anti-discrimination statutes. *See* Dockets 12, 15, 21, and 22. As the EEOC points out, the ADA adopted the same enforcement provisions as Title VII. Docket 12 at 7 (citing 42 U.S.C. § 12117(a) and 42 U.S.C.e-4 *et seq.*). As explained by one federal district court, "[g]iven that Congress enacted the ADA well after the Supreme Court decided *Northwest Airlines*, Congress presumably chose to incorporate into the ADA the construction of Title VII remedies set forth in *Northwest Airlines*." *Lane v. U.S. Steel*, 871 F. Supp. 1434,

1436 (N.D. Ala. 1994) (citing *United States v. Jordan*, 915 F.2d 622, 628 (11th Cir. 1990) ("Under accepted rules of statutory construction, it is generally presumed that Congress, in drafting legislation, is aware of well established judicial construction of other pertinent existing statutes.")). Also, "it is unthinkable that Congress enacted the ADA for the special benefit of a class of *employers*. To the contrary, the ADA, like Title VII, is designed to protect *employees* from adverse employment decisions motivated by discrimination." *Id.* at 1437. The enforcement provisions of the ADA and Title VII do not exist to protect employers, nor do they provide employers with the option to transfer liability by indemnification or contribution. Thus, given that Title I of the ADA contains the same enforcement provisions as Title VII, the court concludes that the holding in *Northwest Airlines* applies to claims brought under the ADA.

Reasoning by analogy, the court finds that the Supreme Court's decision in *Northwest Airlines*, 451 U.S. at 98, and the Eighth Circuit's decision in *Travelers*, 497 F.3d 867-68, require a finding here that M.G. Oil's third-party claims for contribution and indemnification are impermissible under Title I of the ADA.

## CONCLUSION

The court finds that the enforcement provisions codified in Title I of the ADA are identical to the enforcement provisions found in Title VII. Given the Supreme Court's interpretation of this provision in *Northwest Airlines*, 451 U.S. at 98, finding that claims of contribution are barred under Title VII and the Equal Pay Act, the court concludes that the same reasoning must apply here.

9

Thus, M.G Oil's claims seeking contribution and indemnification are barred under Title I of the ADA. It is

    ORDERED that the EEOC's motion to strike (Docket 11) is granted.

    IT IS FURTHER ORDERED that TestPoint's motion to dismiss without prejudice (Docket 14) is granted.

    DATED this 10th day of August, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE