UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                    Plaintiff,<br><br>vs.<br><br>M.G. OIL COMPANY,<br>d/b/a HAPPY JACK'S,<br><br>                    Defendant | 4:16-CV-04131-KES<br><br>ORDER DENYING MOTION FOR RECONSIDERATION AND DENYING MOTION TO CERTIFY JUDGMENT |

      On August 10, 2017, the court entered order granting motions to strike and dismiss defendant, M.G. Oil Company's, third-party complaint. Docket 23. On that same date, the court also entered a judgment dismissing TestPoint Paramedical, LLC as a third-party defendant. Docket 24. M.G. Oil now moves for reconsideration of the court's August 10, 2017 order or, in the alternative, for an order certifying that the court's judgment dismissing TestPoint was a final judgment under Federal Rule of Civil Procedure 54(b). Docket 27. Plaintiff, the Equal Employment Opportunity Commission (EEOC), and TestPoint oppose M.G. Oil's motion. For the reasons that follow, the court denies M.G. Oil's motion.

## BACKGROUND

      On April 8, 2013, Kim Mullaney applied for a job in Sioux Falls, South Dakota with Happy Jack's, which is owned by M.G. Oil. Docket 2 ¶15.

Contingent on the successful completion of a drug test, Mullaney was offered a position with M.G. Oil. *Id.* Mullaney took her drug test on April 9, 2013. *Id.*

At the time Mullaney took her drug test, M.G. Oil had a contract with TestPoint to have TestPoint analyze the drug tests of M.G. Oil's prospective employees. Docket 7 ¶ 4. Under this contract, TestPoint was required to inform M.G. Oil whether the prospective employee's test results were negative or non-negative for drugs. *Id.* M.G. Oil asserts that before TestPoint shared the results of a prospective employee's drug test with M.G. Oil, TestPoint was required to send all non-negative drug tests to a medical review officer to determine whether the non-negative result was caused by the prospective employee's lawful use of a prescription drug. *Id.* ¶ 5. Whenever a prospective employee's non-negative result was caused by lawful use of a prescription drug, TestPoint was required to report the test result to M.G. Oil as negative. *Id.* ¶ 6. Per M.G. Oil's company policy, if a prospective employee's drug test was reported to M.G. Oil as non-negative, M.G. Oil would terminate the conditional offer of employment. Docket 2 ¶ 17; Docket 7 ¶ 10.

TestPoint reported to M.G. Oil that Mullaney's drug test result was non-negative. Docket 2 ¶ 17; Docket 7 ¶ 9. Because Mullaney's drug test result was non-negative, M.G. Oil withdrew its conditional offer of employment consistent with the company's drug test policy. Docket 2 ¶ 17; Docket 7 ¶ 10. M.G. Oil contends that when it withdrew Mullaney's conditional offer of employment, TestPoint provided no indication that Mullaney's drug test had not been sent to a medical review officer to verify the result. Docket 7 ¶ 9.

Mullaney claims she is a disabled person under Sections 3 and 101(8) of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12102 and 12111(8), and has impairments of her neck and back. Docket 2 ¶ 14. Mullaney alleges that after M.G. Oil withdrew her employment offer she explained to M.G. Oil that the non-negative drug test result was caused by her lawful use of a prescription pain killer that she took to manage her impairments. *Id.* ¶ 18. Mullaney also claims that despite her explanation, M.G. Oil refused to reconsider its decision not to rehire her. *Id.* ¶ 20.

Claiming to fit the ADA's disabled person description, Mullaney filed her charge against M.G. Oil with the EEOC. *Id.* ¶ 7. On Mullaney's behalf, the EEOC sent a conciliation letter to M.G. Oil, alerting the company of the alleged discriminatory actions that it took against Mullaney and seeking appropriate relief. *Id.* ¶ 8. M.G. Oil and the EEOC could not reach an agreement about how to resolve Mullaney's complaint with M.G. Oil. *Id.* ¶ 10. After the EEOC's letter concerning Mullaney's alleged discrimination failed to resolve the dispute, the EEOC filed suit against M.G. Oil on Mullaney's behalf. *Id.* ¶¶ 9-10.

The EEOC's complaint alleges that M.G. Oil has discriminated against Mullaney and has used unlawful employment practices both in violation of Title I of the ADA. *Id.* ¶¶ 3, 12. In response to these allegations, M.G. Oil filed a third-party complaint against TestPoint, claiming that if M.G. Oil was found to be liable to Mullaney for discrimination, then TestPoint was liable to it for all (indemnification) or part (contribution) of the judgment because TestPoint breached its contract with M.G. Oil and was negligent. Docket 7 ¶¶ 13-23.

The EEOC moved to strike M.G. Oil's third-party complaint. Docket 11. And TestPoint moved to dismiss M.G. Oil's third-party complaint for failure to state a claim upon which relief can be granted. Docket 14.

On August 10, 2017, the court entered order granting the EEOC's motion to strike and granting TestPoint's motion to dismiss M.G. Oil's third-party complaint. Docket 23. In granting these motions, the court relied upon the United States Supreme Court's decision in *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77 (1981), and upon the United States Court of Appeals for the Eighth Circuit's decision in *Travelers Casualty & Surety Co. of America v. IADA Services., Inc.*, 497 F.3d 862 (8th Cir. 2007). *See* Docket 23 at 5-8. In fact, the court concluded that the impact of the decisions in *Northwest Airlines* and *Travelers* required the court, reasoning by analogy, to conclude that M.G. Oil's third-party claims for contribution and indemnification were impermissible under Title I of the ADA. *Id.* at 9 (citing *Nw. Airlines*, 451 U.S. at 98 and *Travelers*, 497 F.3d 867-68).

## LEGAL STANDARD

The Federal Rules of Civil Procedure generally do not recognize uniform standards for a court to analyze a motion to reconsider. In this case, M.G. Oil brings its motion to reconsider under Federal Rule of Civil Procedure 54(b), which provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also*

4

*Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 n.3 (8th Cir. 2015) (noting that Rule 54(b) is the appropriate rule under which to bring a motion to reconsider when final judgment has not been entered on any of plaintiff's claims). Under Rule 54(b), district courts have "the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C.1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) (quotation and citation omitted). "While the specific standard for a motion made under Rule 54(b) is unclear, generally courts have found the standard . . . 'to be less exacting than would be a motion under Federal Rule of Procedure 59(e), which is in turn less exacting than the standards enunciated in Federal Rule of Procedure 60(b).' " *Planned Parenthood Minn., N.D. v. Daugaard*, 946 F. Supp. 2d 913, 925 (D.S.D. 2013) (quoting *Colombe v. Rosebud Sioux Tribe*, 835 F. Supp. 2d 736, 750 (D.S.D. 2011), *overruled on other grounds by Colombe v. Rosebud Sioux Tribe*, 747 F.3d 1020 (8th Cir. 2014)); *see also Doctor John's, Inc. v. City of Sioux City*, 438 F. Supp. 2d 1005, 1027 (N.D. Iowa 2006). Although the court's reconsideration of interlocutory orders might be less rigorous than that of final orders for Rules 59(e) or 60(b), courts "should look to the kinds of consideration under those rules for guidance." *Doctor John's*, 438 F. Supp. 2d at 1027 (quotation and citation omitted). Like other motions to reconsider, "[i]t is generally held that a court may amend or reconsider any ruling under Rule 54(b) to correct any clearly or manifestly erroneous findings of facts or conclusions of law." *Jones v. Casey's Gen. Stores*, 551 F. Supp. 2d 848, 854 (S.D. Iowa 2008) (quotations and citation omitted).

**DISCUSSION**

I.  **Motion to Reconsider**

Following the conclusion of briefing on the motions to strike and dismiss—but before the court entered its August 10, 2017 order—the United States Court of Appeals for the Ninth Circuit issued its opinion in the case *City of Los Angeles v. AECOM Services, Inc.*, 854 F.3d 1149 (9th Cir. 2017). M.G. Oil contends that the Ninth Circuit's decision in *AECOM Services* provides a significant change in law that warrants reconsideration of the court's August 10, 2017 order dismissing M.G. Oil's third-party complaint. *See* Docket 28 at 2.

In *AECOM Services*, the issue before the Ninth Circuit was whether Title II of the ADA and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, "preempt a city's state-law claims for breach of contract and *de facto* contribution against contractors who breach their contractual duty to perform services in compliance with federal disability regulations[.]" *AECOM Services*, 854 F.3d at 1152 (italics in original). The plaintiffs in *AECOM Services*, sued the City of Los Angeles alleging that "the City's FlyAway bus facility and service—a bus system that provides transportation between Los Angeles International Airport and various locations—failed to meet the accessibility standards set forth in Title II of the ADA, . . . Section 504 of the Rehabilitation Act, . . . and various California statutes." *Id.* The plaintiffs specifically alleged that the FlyAway bus facility in Van Nuys, California was constructed in a way that made it inaccessible for use by disabled individuals. *Id.* In response to the plaintiffs' complaint, the City of Los Angeles filed a third-party complaint

6

against AECOM Services, Inc., alleging that AECOM, as the successor-in-interest to the party hired by the City to construct the Van Nuys FlyAway facility, was contractually obligated to indemnify the City for all claims to the extent that those claims resulted "*from the negligent and/or intentional wrongful acts or omissions of [AECOM]*, its subcontractors, officers, agents, servants, [or] employees." *Id.* (emphasis and alterations in original).

AECOM Services moved to dismiss the City of Los Angeles's third-party complaint on the theory the City's indemnification claim was preempted by Title II of the ADA and Section 504 of the Rehabilitation Act. *See id.* at 1153. The district court granted AECOM Services' motion to dismiss on preemption grounds. *See id.* On appeal, the Ninth Circuit analyzed and described the boundaries of federal preemption law and discussed how federal preemption law related to AECOM Service's appeal. *See id.* at 1154-1161. The Ninth Circuit also analyzed the legislative histories behind Title II of the ADA and Section 504 of the Rehabilitation Act. *Id.* at 1159-60. What the Ninth Circuit found telling about the legislative histories of these statutes was that neither statutes' legislative history "addresses claims for state-law indemnification or contribution filed by a public entity against a contractor." *Id.* at 1160. Thus, after reviewing federal case law on point and the legislative histories of the acts, the Ninth Circuit concluded that the district court erred in dismissing the City of Los Angles' third-party claims for contribution and indemnity because the claims there were based only on the actions directly attributed to AECOM Services and would not lead to a complete shift away from the City's liability

7

under Title II of the ADA or Section 504 of the Rehabilitation Act. *See id.* at 1160-61.

M.G. Oil argues that the Ninth Circuit's decision in *AECOM Services* shows that M.G. Oil's claims for contribution and indemnity in this case are not preempted under Title I of the ADA. *See* Docket 28 at 5-6. M.G. Oil's reliance on *AECOM Services*, however, appears to be based on M.G. Oil's misreading of the court's August 10, 2017 order as a preemption opinion. For example, M.G. Oil argues that the court's August 10, 2017 order "relied heavily on the Eighth Circuit's decision in *Travelers* . . . , which held that sate common-law claims for contribution are *preempted* under *ERISA*." *Id.* at 3 (citing Docket 23 at 7-8) (emphasis in original). M.G. Oil reiterates this argument in its reply brief stating "[c]learly, this Court's prior ruling dismissing the third-party claim, . . . depend[ed] on a misunderstanding of the scope of the Eighth Circuit's application of preemption in *Travelers* . . . ." Docket 33 at 2.

The court's August 10, 2017 order did not, as M.G. Oil suggests, find that M.G. Oil's claims for contribution and indemnity were preempted under Title I of the ADA.[1] Instead, the court's decision, although citing *Travelers* as analogous authority, relied most heavily upon the Supreme Court's decision in *Northwest Airlines*. *See* Docket 23 at 5-10.

---

[1] The court's August 10, 2017 order uses the word "preemption" only once. Docket 23 at 8. That singular use of the word "preemption" appears in a passage where the court quotes from the Eighth Circuit's decision in *Travelers*. *Id.* at 7-8 (quoting *Travelers*, 497 F.3d at 868). Thus, given that the court's August 10, 2017 order provided no preemption analysis and did not use the word "preemption" in any other portion of the order, the court rejects M.G. Oil's attempt here to paint the decision as resting on preemption grounds.

8

In *Northwest Airlines,* the Supreme Court had to decide whether parties could seek the remedy of contribution in suits brought under Title VII and the Equal Pay Act. *Nw. Airlines*, 451 U.S. at 79-80. In addressing this question, the Supreme Court declined to imply a right to contribution under Title VII or the Equal Pay Act because to recognize that right would interfere with Congress's decision to omit the remedy from the protections of the Title VII and the Equal Pay Act. *Id.* at 97-98. Supporting the Court's conclusion not to imply the remedy of contribution under Title VII or the Equal Pay Act is the presumption that Congress's decision to omit a remedy from a statute "is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Id.* at 97. And because Title VII of the Civil Rights Act of 1964 and the Equal Pay Act of 1963 were comprehensive legislative schemes that included integrated procedures for enforcement, the Supreme Court concluded that "[t]he judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs." *Id.* at 97 (footnote omitted).[2]

In the August 10, 2017 order, the court found that the enforcement provisions of Title I of the ADA and Title VII were identical. Docket 23 at 9. After making this finding, the court, relying on the Supreme Court's decision in

---

[2] Although not cited in the August 10, 2017 order, it is worth noting that the Supreme Court has cited *Northwest Airlines* for the proposition that, in the absence of an act of Congress granting parties the remedy, "[t]here is no general federal right to contribution." *Paroline v. United States,* 134 S. Ct. 1710, 1725 (2014) (citing *Nw. Airlines,* 451 U.S. at 96-97).

9

*Northwest Airlines*, concluded that M.G. Oil's claims for contribution and indemnity against TestPoint were barred under Title I of the ADA and dismissed M.G. Oil's third-party complaint. *Id.* at 9-10. While this court's August 10, 2017 order primarily relied on the *Northwest Airlines* decision, M.G. Oil's briefing on its motion to reconsider fails to address this issue.[3]

Given that the court's decision in the August 10, 2017 order did not rely on preemption grounds, the court declines to give the Ninth Circuit's decision in *AECOM Services* any weight. Further, even when the court considers the Ninth Circuit's decision in *AECOM Services*, the court does not believe that the Ninth Circuit's decision supports granting M.G. Oil's motion for reconsideration of the August 10, 2017 order. Supporting this conclusion are several factors. First, the ADA claims in *AECOM Services* were brought under Title II, which governs the accessibility of public accommodations, and not under Title I, which bars employment discrimination against persons with disabilities. *See AECOM Services*, 854 F.3d at 1152. Second, the plaintiffs in *AECOM Services* brought claims under both federal law and California state law. *See id.* Finally, the Ninth Circuit's decision in *AECOM Services* does not cite the Supreme Court's decision in *Northwest Airlines* nor any other decision that this court relied on in granting the motions to strike and dismiss M.G. Oil's third-party complaint. Thus, because M.G. Oil has failed to show that the court's August 10, 2017 order was based on clearly erroneous findings of fact or

---

[3] In fact, M.G. Oil's briefing on its motion to reconsider cites the Supreme Court's decision in *Northwest Airlines* only once. *See* Docket 33 at 8 (citing *Nw. Airlines*, 541 U.S. at 88 n.20).

conclusions of law, *see Jones*, 551 F. Supp. 2d at 854 (quotations and citation omitted), M.G. Oil's motion for reconsideration under Rule 54(b) is denied.

## II.     **Interlocutory Appeal**

As an alternative basis, M.G. Oil argues that if the court decides not to reconsider the August 10, 2017 order dismissing the third-party complaint, the court should certify the August 10, 2017 order as a final order under Rule 54(b). Docket 28 at 8-9. The EEOC and TestPoint oppose M.G. Oil's motion arguing that Rule 54(b) certification is inappropriate given the current posture of this matter.

The Eighth Circuit has directed district courts to undertake a two-step analysis when deciding whether to grant Rule 54(b) certification. *Williams v. Cty. of Dakota*, 687 F.3d 1064, 1067 (8th Cir. 2012). In this analysis, a district court " 'must first determine that it is dealing with a final judgment . . . . in the sense that it is an ultimate disposition of an individual claim.' " *Id.* (quoting *Outdoor Cent., Inc. v. Greatlodge.com, Inc.*, 643 F.3d 1115, 1118 (8th Cir. 2011)). "Second, '[i]n determining that there is no just reason for delay, the district court must consider both the equities of the situation and judicial administrative interests, particularly the interest in preventing piecemeal appeals.' " *Id.* (quoting *Outdoor Cent.*, 643 F.3d at 1118). "Interlocutory appeals are 'generally disfavored' and 'only the special case . . . warrants an immediate appeal from a partial resolution of the lawsuit.' " *Dean v. Cty. of Gage,* 807 F.3d 931, 937-38 (8th Cir. 2015) (quoting *Clark v. Baka*, 593 F.3d 712, 714–15 (8th Cir. 2010) (per curiam)).

After reviewing the arguments presented by the parties here, the court concludes that Rule 54(b) certification of the decision to dismiss M.G. Oil's third-party complaint is not proper. As the Eighth Circuit has made clear, "[a]n order dismissing a third-party claim for contribution or indemnity should rarely be certified for immediate appeal under Rule 54(b)." *Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993) (citation omitted). This is because the decision of whether contribution or indemnity is warranted "is collateral to and dependent upon a finding of liability." *Id.* at 808 (internal quotation and citation omitted). Here that means that in order for M.G. Oil to be able to seek contribution or indemnity from TestPoint, assuming the remedies are even available, there must first be a finding by the court that M.G. Oil is liable for the harm alleged by the EEOC. Thus, because granting M.G. Oil's request for Rule 54(b) certification before answering the threshold question of whether M.G. Oil is liable would lead to a waste of judicial resources, the court will not certify its August 10, 2017 order as final.

## CONCLUSION

The court concludes that M.G. Oil has failed to show that the court's August 10, 2017 order was based on clearly erroneous findings of fact or conclusions of law. The court also concludes that to grant M.G. Oil's request to certify the August 10, 2017 order as a final order under Rule 54(b) would lead to a waste of judicial resources and would only encourage piecemeal appeals of issues that might not materialize. Thus, it is

ORDERED that M.G. Oil's motion for reconsideration, or in the alternative, certification that the August 10, 2017 order is a final order under Rule 54(b) (Docket 27) is denied.

DATED January 25, 2018.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE